OPINION OF THE COURT
Charles J. Markey, J.
*537 In the story of the successful movie and Broadway musical of Mel Brooks’s “The Producers,” the accumulation of disastrous choices resulted in a play becoming a smash “hit.” In the present case, the totality of the unusual circumstances and lapses, chiefly by plaintiff’s counsel, might still render a successful conclusion for the plaintiff. The final determination of whether a plaintiff who gave up his interest in a house in exchange for a mortgage note in 1993 will either get a long-awaited judgment or find that his action must be dismissed as abandoned, however, as detailed below, must be made not by this court, but by a Justice of the Supreme Court.
Plaintiff Samuel Simmons moves for a default judgment in the amount of $42,000, with interest from May 1994. Defendant Dorothy Simmons, who was the plaintiff’s former wife, has never appeared in the action and has not submitted papers in opposition to the motion.
As gleaned from the exhibits to the verified summons and complaint, filed in this court on October 29, 1998, plaintiff and defendant signed an agreement on May 14, 1993, in which Ms. Simmons acknowledged that she owed the sum of $47,700 to Mr. Simmons. The agreement recites that Mr. Simmons has an interest in the presumed marital premises, located at 115-99 228th Street, Cambria Heights, in the County of Queens. Ms. Simmons sought to “buy out” her ex-husband’s interest in the house. By the terms of this agreement, Mr. Simmons agreed to deed his interest in the house to his former wife on April 29, 1993. She was to apply for financing and then repay her former husband the sum of $42,000, on or before May 30, 1994.
Despite the fact that the contract had a recital that each party consulted with his and her own counsel, the agreement is hardly a model of clarity. Specifically, it stated:
“In consideration Samuel Simmons will take a note for forty-two thousand dollars, said note is to run as a lien on the property. The note is due and payable on May 30th 1994. If Dorothy Simmons doesn’t qualify in one year for the loan, she agrees to put the house on the market. Dorothy Simmons agrees to execute such note whereas [sic] the sum of five thousand dollars will be credited to Dorothy Simmons.[1] This sum representing any and all areas [sic] that maybe [sic] due and owing as of this date and;
*538 “Henceforth all future alimony payments shall cease and Dorothy Simmons hereby waives any claim which she may have against Samuel Simmons for,
[sic] alimony maintenance or support and agrees that Samuel Simmons [sic] duty to support and maintain her are extinguished in consideration of the provisions of this contract.
“Notwithstanding the foregoing should the circumstances of the house change from what they presently are [sic] Samuel Simmons reserves the right to repayment on demand.”
As reflected by the quoted language, aside from the many errors in grammar and punctuation, the agreement is confusing. At any rate, Ms. Simmons signed a mortgage note dated April 29, 1993 in the amount of $42,700, and she caused her signature to be notarized on May 19, 1993. The note required the payment of 10% annual interest to be computed from April 29, 1993, and the entire sum was to be repaid on May 30, 1994.
In October 1998, Mr. Simmons, represented by “Mortimer A. Lawrence, Esq. and Associates” caused a verified summons and complaint to be served on Ms. Simmons by substituted service (see, CPLR 308 [2]). A copy of the affidavit of service and of a mailing receipt was stapled into the legal back of the summons and complaint and timely filed with the Clerk of the Civil Court on October 29, 1998, and within the six-year limitations period for an action on a mortgage note (see, Lavin v Elmakiss, 302 AD2d 638 [3d Dept 2003]; Albin v Pearson, 266 AD2d 487 [2d Dept 1999]).
Mr. Lawrence signed the complaint, containing a single cause of action in the amount of $42,000, plus interest from May 30, 1994. The demand for $42,000 was way in excess of this court’s $25,000 maximum monetary jurisdiction (see, CCA 202; see, S.S.I.G. Realty v Bologna Holding Corp., 213 AD2d 617, 619 [2d Dept 1995]; Metrotran Adv. Trust Fund v Cado Transp., 156 Misc 2d 725 [Civ Ct, Kings County 1993]; Kiros v St. Stephen’s Bible Coll. Realty Mgt., 2001 NY Slip Op 40622[U] [Civ Ct, NY County 2001]).
Lawrence caused a complaint to be filed in this court, exceeding this court’s subject matter jurisdiction, and the clerk’s office *539 did not catch the impermissibly high amount stated in both the summons and the verified complaint, although it is not their responsibility to detect such errors.
Nothing occurred in this case for four years. By notice of motion dated September 30, 2002, returnable on October 17, 2002, Lawrence, now a partner of Hopkins, Lawrence & Bailey, EC. (HL&B), moved for a default judgment, based on Ms. Simmons’s failure to answer the complaint. The papers contained a sworn statement by Mr. Simmons as to the $42,000 allegedly due him, plus interest. In a supporting affirmation, Lawrence explained the law office failure in timely moving for a default within one year of Ms. Simmons’s default (see, CPLR 3215 [c]). He stated that he moved his offices in August 1999 from Queens Village, Queens County, where he was a solo practitioner, to Springfield Gardens, where he formed a partnership with other attorneys. The legal backs of the summons and. the motion for a default judgment support the explanation.
During the move, the file was “lost,” until discovered by an HL&B intern during the summer of 2002. Upon discovering the file, HL&B immediately made a motion seeking a default judgment. On October 17, 2002, apparently Ms. Simmons or a representative acting for her was in court, because Judge (now Justice) Marguerite Grays adjourned the motion to December 5, 2002 and set up a briefing schedule, denoted on the notice of motion, marking the return date final. On December 5, 2002, Judge Edgar Walker adjourned the matter to January 23, 2003, and revised the briefing schedule, signifying that Ms. Simmons or her representative appeared again. Judge ¥/alker again marked the motion “final.” On January 23, 2003, however, Judge Anthony Gazzara marked the motion “off calendar” because of the failure of either side to appear, in violation of this court’s rules.
On March 4, 2003, Lawrence filed another motion for a default judgment in the office of Special Term, again explaining the circumstances of the lost file and adding that he arrived late to court on the prior January 23 return date. The new motion was returnable on March 20, 2003, before the undersigned, and Ms. Simmons failed to appear, resulting in the motion being marked “submitted on default.”
However, as seasoned practitioners understand, such a marking does not automatically mean that the movant is entitled to the relief requested. A conscientious court must still review the papers and determine whether the relief requested is appropri *540 ate. Thus, as is practiced by the clerk’s office of Special Term, short order forms are appended to the motion, by or under the supervision of the clerk’s personnel, filling in the caption, as a convenience to the judges and their staff.
Apparently, the new default motion never made its way up to chambers, probably having been appended to other papers, routed mistakenly to another courtroom or file, or misplaced. An associate of HL&B came to the chambers of the undersigned on October 23, 2003, requesting a copy of a decision. It was then discovered, after an hour’s long, consuming search, that the papers had never been transferred to chambers from the courtroom on March 20, 2003. With a letter dated November 23, 2003, Lawrence’s partner, Lamont R. Bailey, Esq., as invited by the court, provided a duplicate of the motion for a default judgment.
During the entire sequence of the mishaps of a lost office file and a missing motion, plaintiffs counsel still apparently had not noticed that the complaint’s monetary demand was in excess of this court’s jurisdiction and, to date, apparently is still unaware of such fact.
The issue for this court’s determination is the appropriate relief where the statute of limitations has run on plaintiff’s mortgage note, plaintiff has transferred his share of a house in reliance on a mortgage note, plaintiff has been litigating in the wrong courthouse, and, as a result of several mishaps, years have passed.
It is evident that since this court has no jurisdiction to entertain a cause of action for $42,000, it cannot even hear the merits of the default judgment, even where made on default.
Professor David D. Siegel’s Practice Commentaries suggest three solutions where a lawsuit has been initiated in Civil Court in excess of its jurisdictional limits (see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, CCA 202, at 37). First, the New York State Constitution expressly mandates a transfer to the court with the proper jurisdiction. Article VI, § 19 (f) of the New York State Constitution provides:
“The courts for the city of New York established pursuant to section fifteen of this article shall transfer to the supreme court or the surrogate’s court or the family court any action or proceeding which has not been transferred to them from any of said courts and over which the said courts for the city of New York have no jurisdiction.”
*541 As seen by the quoted language, the directive to transfer is cast in mandatory, and not permissive, terms. The constitutional directive, in addition, is self-executing and needs no implementing legislation. Even though the plaintiff could have moved in the Supreme Court to have this case removed from Civil Court (see, CPLR 325 [a], [b]; see, e.g., Braunstein v Braunstein, 72 AD2d 682 [1st Dept 1979] [reversing order that denied transfer]), the failure of CPLR 325 to include a provision permitting a judge of the New York City Civil Court to initiate the transfer to the Supreme Court has no bearing (see discussion in Ghobashy v Sabra, 127 Misc 2d 915, 916 [Westchester County Ct 1985]; Kemper v Transamerica Ins. Co., 61 Misc 2d 7, 9-10 [Civ Ct, NY County 1969]).
Since attorneys can usually be counted upon to know the jurisdictional limits of the various courts to which they are admitted, the number of times that a court of inferior jurisdiction has needed to invoke the constitutional mandate is not frequent, but it has happened (see, e.g., Eastrich No. 80 Corp. v Patrolmen’s Benevolent Assn., 180 Misc 2d 98, 99 [App Term, 1st Dept 1999] [per curiam] [rent in excess of $25,000 jurisdictional limit]; Kaminsky v Connolly, 73 Misc 2d 789, 790 [App Term, 1st Dept 1972] [per curiam] [seeking declaratory relief]; Montgomery Trading Co. v Cho, 2003 NY Slip Op 50665[U] [Civ Ct, NY County, Apr. 2, 2003] [ejectment action where realty’s assessed value was over $25,000 jurisdictional limit]; Sciascia v Maiorana, NYLJ, Jan. 6, 2003, at 17, col 2 [Civ Ct, Richmond County] [corporate dissolution]; Lehmann v Lehmann, 182 Misc 2d 22, 27-28 [Civ Ct, Kings County 1999] [specific performance]; Apollon Waterproofing & Restoration Corp. v Brandt, 172 Misc 2d 888 [Civ Ct, NY County 1997] [transferring third-party action for declaratory relief]; UFI, Inc. v Medical & Hazardous Waste Mgt. Co., NYLJ, Sept. 13, 1993, at 25, col 2 [Civ Ct, NY County] [money damages exceeded jurisdictional limit]; Kaufman v CBS, Inc., 135 Misc 2d 64 [Civ Ct, NY County 1987] [corporate indemnification proceeding]; Hillman v CNA Ins. Cos., 132 Misc 2d 421 [Civ Ct, Kings County 1986] [damages claim exceeding monetary jurisdiction]; Pratt Inst, v Niehoff Realty, 120 Misc 2d 845, 847 [Civ Ct, Kings County 1983] [same]; Weiss v Furlong, 120 Misc 2d 594, 595-596 [Civ Ct, Richmond County 1983] [forfeiture claim]; Zurich Ins. Co. v Evans, 90 Misc 2d 286, 288 [Civ Ct, Queens County 1977] [proceeding to stay arbitration]; Kemper, 61 Misc 2d 7 [1969], supra [claim of damages beyond jurisdictional limit]).
*542 The second alternative is the motion to transfer made in Supreme Court, pursuant to CPLR 325 (a), discussed above.
The third alternative suggested by Professor Siegel is the reduction of the damages in the ad damnum clause to this court’s jurisdictional maximum (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, CCA 202, supra; see, e.g., B&R Textiles Corp. v Empire Bias Binding Co., 126 Misc 2d 965 [Civ Ct, NY County 1985]). Prior to the 1962 revision to the State’s Constitution, adding article VI, § 19, with a further revision in 2002, as quoted above, the court of inferior jurisdiction was not even able to entertain a motion to lower the ad damnum clause or to discontinue the action, since if a court had no subject matter jurisdiction initially, it could not even consider any motion of an improper action (see, e.g., Vigil v Cayuga Constr. Corp., 185 Misc 675 [NY City Ct, NY County 1945], affd without op 185 Misc 680 [App Term, 1st Dept 1945], affd without op 269 App Div 934 [1st Dept 1945]; Central Park-W. 84th St. Corp. v Cusack, 130 Misc 770 [NY City Ct, NY County 1927]).
Surely, plaintiff might find this third alternative inviting. Even if the plaintiff were willing to reduce the demanded amount from $42,000 to $25,000, when interest is added from May 30, 1994, the amount of the judgment would exceed $42,000. The reason that this alternative would be compelling is that, if this court were to transfer the case to Supreme Court, it is unknown whether a justice of the Supreme Court might dismiss the complaint altogether for the reasons explained below.
The problem with the third alternative is that it should be initiated by a motion by a plaintiff willing to accept the lower amount. Plaintiff, however, in the present case, made no such motion, and this court, on its own initiative, should not take a complaint seeking $42,000 and slice it to $25,000, especially if, theoretically, he can recover the full amount and additional interest in Supreme Court.
The only legitimate relief that this court must undertake, pursuant to the directive of the State’s Constitution, is to transfer the matter to the Supreme Court.
In the Supreme Court, a justice may consider the present motion, but may also decide to dismiss the action, since the failure of the plaintiff, absent reasonable excuse, to move for a default judgment within one year of the defendant’s default results in the case’s dismissal as abandoned (CPLR 3215 [c]; see, e.g., Gayle v Parker, 300 AD2d 145, 146 [1st Dept 2002] [plaintiff did *543 not move to enter a default judgment for five years]; State St. Bank & Trust Co. v Francis, 284 AD2d 324 [2d Dept 2001] [same]; Opia v Chukwu, 278 AD2d 394 [2d Dept 2000]).
It would be presumptuous and improper for this court to suggest a resolution to this intriguing legal issue under CPLR 3215 (c), under the interesting facts of the case at bar. The undersigned does not dare to opine on this matter, but, for the convenience of the higher court, sets forth some of the relevant cases. The cases on whether a file lost or misplaced during a move of a law practice or office can constitute excusable law office failure are not uniform (compare, Monroe v Crabtree Ford, 137 AD2d 747, 748 [2d Dept 1988] [confusion caused by move of law office from one county to another was excusable]; Haberlin v New York City Tr. Auth., 228 AD2d 383, 384-385 [1st Dept 1996] [reasonable excuse because of move], with Ellis v Urs, 121 AD2d 361, 362-363 [2d Dept 1986] [misplaced file due to law office move was insufficient as an excuse]; Manfreda v Kendall Agency, 57 AD2d 727, 728 [4th Dept 1977] [same]; Lee v City School Dist., 57 AD2d 566 [2d Dept 1977] [same]).
In light of the split in appellate authority on a critical issue, the court’s narration of the missing instant motion, returnable on March 20, 2003, the original of which has not been seen since, tends to show that mistakes do happen and papers do get lost even inside a courthouse.
Another consideration for a justice of the Supreme Court would be, in light of the yet undisputed fact, in the affidavit of merit, that Mr. Simmons conveyed his interest in the house to his ex-wife in exchange for the mortgage note, whether the lapses by his counsel were substantial or amounted simply to “ ‘negligence in the air’ ” (Martin v Herzog, 228 NY 164, 170 [1920] [Cardozo, J.], quoting Pollock, Torts, at 472 [10th ed]; see, Tanel v Kreitzer & Vogelman, 293 AD2d 420 [1st Dept 2002]).
The court, therefore, on its own motion, directs that the instant action be transferred to the Supreme Court, Queens County, under the State Constitution.[2] To implement the transfer, the plaintiff shall purchase an index number in *544 Supreme Court and a request for judicial intervention and complete and file the appropriate forms and papers, with a copy of this order. The plaintiff shall then present proof of the filing to the Clerk of the Civil Court, who shall then transfer this action and motion to Supreme Court (see, UFI, Inc. v Medical & Hazardous Waste Mgt. Corp., NYLJ, Sept. 13, 1993, at 25, col 2, supra; Kaufman v CBS, Inc., 135 Misc 2d at 65-66).
This court is causing a copy of this decision and order to be mailed to all parties, including to the defendant at the address indicated on plaintiffs motion. To the extent that Mr. Simmons and his counsel have learned of a new address for Ms. Simmons, they are instructed to mail a copy of this decision to her at her new address, immediately, with notice of entry, and to notify her of any appearance date in Supreme Court. Since this matter is now being transferred to the correct court, due process considerations require that plaintiff notify Ms. Simmons of any new court dates at all presently known addresses.
Although authority exists that this court should deny the present motion in light of the want of subject matter jurisdiction (see, e.g., Hillman v CNA Ins. Cos., 132 Misc 2d at 423), the procedure recommended by this court is that, especially because of the lack of jurisdiction, this court cannot even deny the motion or deny it with leave to renew in the appropriate forum, but should, instead, order that the present motion be transferred to Supreme Court, together with the rest of the court file (see, e.g., UFI, Inc. v Medical & Hazardous Waste Mgt. Co., NYLJ, Sept. 13, 1993, at 25, col 2, supra; Weiss v Furlong, 120 Misc 2d at 596).

. The fact that the summons and complaint demanded $42,000 evidently reflects the credit of $5,000 given to Ms. Simmons in the May 1993 contract, *538 from the indebtedness of $47,700, acknowledged by her. Counsel, however, fails to account for the balance of $700, so it is unclear whether Ms. Simmons paid only that amount or the failure to include the $700 in the ad damnum clause was an oversight.

. Theoretically, after a transfer by this court to the Supreme Court, pursuant to article VI, § 19 of the New York State Constitution, it is conceivable that the Supreme Court can then transfer the case back to Civil Court, pursuant to CPLR 325 (d). Such a retransfer to this court would not appear to be proper under the facts of this case. Here, the balance due under the mortgage *544 note is $42,000, exclusive of any interest. CPLR 325 (d) states that the section is to be employed only “where it appears that the amount of damages sustained may be less than demanded.”