OPINION OF THE COURT
David I. Schmidt, J.
Defendant New York City Housing Authority (the Housing Authority) moves for an order: (1) pursuant to CPLR 3211 (a) *882 (5) and (a) (7), dismissing the complaint of plaintiffs Citadel Estates, L.L.C.; Fortress Crotona, L.L.C.; Fortress 31, L.L.C.; and M.Z. Partners, L.L.C. (hereinafter collectively referred to as the landlords), in its entirety because plaintiffs failed to challenge the Housing Authority’s determination in a CPLR article 78 proceeding; (2) even if plaintiffs had brought an article 78 proceeding, their claims are time-barred; (3) the complaint fails to state a cause of action; and (4) with respect to some claims, plaintiffs did not comply with the notice and pleading requirements set forth in Public Housing Law § 157, plaintiffs lack standing to challenge the Housing Authority’s determination to terminate tenants from the Section 8 program and plaintiffs’ claims are moot because the Housing Authority is voluntarily providing all the relief to which they are entitled.
Facts and Procedural Background
Plaintiffs, four landlords who participate in the federally funded Section 8 rent subsidy program, commenced this breach of contract action on December 30, 2011 seeking to recover increased rent subsidies that were allegedly unpaid for apartments located in several buildings in the Bronx, which are occupied or were previously occupied by tenants now or previously participating in the Section 8 program administered by the Housing Authority. For 26 tenants, the landlords claim that the Housing Authority has refused to pay rent increases which have been authorized under the New York State Rent Stabilization Law, as approved by the Rent Guidelines Board. For three tenants, the landlords claim that the Housing Authority suspended rent subsidy payments based upon “failed” housing quality standards (HQS) inspections. For three tenants, the landlords claim that the Housing Authority stopped making subsidy payments after finding that the tenant was no longer entitled to participate in the Section 8 program. The landlords assert that they were never given notice of the Housing Authority’s determinations to refuse to pay, to suspend or to terminate the housing assistance payments.
The Section 8 Program
Through the Section 8 program, the United States Department of Housing and Urban Development (HUD) provides rent subsidies to landlords of apartments occupied by qualifying low income families to enable them to afford decent, safe and sanitary housing (see 42 USC §§ 1437 [a] [1] [A]; 1437f [a]). The requirements for the Section 8 program are set forth in the *883 regulations promulgated by HUD (see 24 CFR part 982). The Section 8 program involves four distinct legal relationships that are addressed in the federal regulations: (1) the relationship between the Housing Authority and HUD, through which HUD finances the Section 8 program pursuant to an annual contributions contract with the Housing Authority; (2) the relationship between the Housing Authority and the tenant, created by the issuance of a voucher; (3) the relationship between the Housing Authority and the landlord, which is governed by a housing assistance payment (HAP) contract, under which the Housing Authority pays the Section 8 landlord monthly rent subsidy payments, known as housing assistance payments, from funds allocated by HUD, which comprise the difference between the total rent due for an apartment leased by the landlord to a qualifying tenant and the amount of rent due from the tenant pursuant to the controlling federal regulations (see 24 CFR 982.305 [c], [e]; 982.451); and (4) the relationship between the tenant and the landlord, which is governed by a lease.
The Housing Authority is a public benefit corporation created under Public Housing Law § 401 to operate and to maintain low income housing in New York City. The Housing Authority is one of the agencies that administers the Section 8 program.
As is also relevant to the instant dispute, controlling regulations provide that the Housing Authority may only make housing assistance payments for apartments that meet housing quality standards as established by HUD (24 CFR 982.401, 982.404 [a]). All apartments subsidized with Section 8 funds must be inspected and must meet HQS prior to the initial lease term and at least annually thereafter (24 CFR 982.405). The HAP contract terminates automatically 180 calendar days after the last housing assistance payment is made to the owner (24 CFR 982.455). Further, a Section 8 tenant must regularly furnish the Housing Authority with information establishing total household income and composition (24 CFR 982.551 [b]). The Housing Authority may terminate a Section 8 subsidy if a participant fails to comply with the program requirements (24 CFR 982.551, 982.552).
The regulations further provide that a landlord may request an adjustment of the contract rent upon a renewal of a Section 8 lease (24 CFR 982.519 [a]). The landlord must request the adjustment by giving the Housing Authority 60 days’ notice and by complying with all requirements under the HAP contract (24 CFR 982.519 [b] [4], [5], [6]). The Housing Authority must then *884 determine whether the rent requested by the owner is reasonable in comparison to rent for other comparable, unassisted units (24 CFR 982.507 [a], [b]). The adjustments will take effect commencing at least 60 days after the Housing Authority receives a landlord’s request for a rent increase (24 CFR 982.519 [b] [5]).
The Housing Authority’s Claim That the Landlords Cannot Challenge its Determinations in a Contract Action
The Parties’ Contentions
The Housing Authority first argues that the instant action must be dismissed because the landlords can only challenge determinations that it makes in an article 78 proceeding. More specifically, the Housing Authority contends that because the landlords are seeking relief in the nature of certiorari to review its decision to suspend housing assistance payments or to refuse to implement lease renewal increases, or mandamus to compel it to act upon the landlords’ requests for lease renewal increases, the claims must be interposed in an article 78 proceeding.
In opposition, the landlords argue that they could not commence an article 78 proceeding to review the Housing Authority’s determinations because no determinations were issued. The landlords also note that Fortress 31 sent a letter dated March 2, 2011 to the Housing Authority requesting written confirmation of what transpired with regard to Debra Ramsey’s Section 8 subsidy. Although the Housing Authority sent a notice to Ms. Ramsey, dated June 30, 2010, advising her of its intention to terminate her Section 8 participation, no response was ever sent to Fortress 31. The landlords also aver that it is well established that in a dispute regarding a government contract, an article 78 proceeding is neither the exclusive nor the appropriate remedy.
Discussion
“It is well settled that where damages allegedly have been sustained due to a breach of contract by a public official or governmental body, the claim ‘must be resolved through the application of traditional rules of contract law’ ” (Matter of Steve’s Star Serv. v County of Rockland, 278 AD2d 498, 499 [2000], quoting Abiele Contr. v New York City School Constr. Auth., 91 NY2d 1, 8 [1997]). Thus, for example, in a dispute concerning the sum due under a contract to transport handicapped children to school, it was held that mandamus to compel payment of the outstanding invoice did not lie and that the dispute was properly *885 resolved in a breach of contract action (Steve’s Star Serv., 278 AD2d at 500). Similarly, an action alleging that a village failed to compensate a plaintiff is properly brought as a contract action (see e.g. Garrigan v Incorporated Vil. of Malverne, 12 AD3d 400 [2004]).
Nonetheless, the court finds that the claims raised by the landlords herein must be adjudicated in an article 78 proceeding. In this regard, the court first rejects the landlords’ contention that the Housing Authority’s assertion that an article 78 proceeding must be commenced to challenge its determinations is limited to cases in which the Housing Authority, for example, suspends a Section 8 subsidy because an apartment failed the HQS review (see e.g. Alpha Dynamics, Ltd. v New York City Hous. Auth., Civ Ct, Bronx County, Sept. 25, 2007, Alessandro, J., index No. CV-022514-05/BX), or removed a tenant from the Section 8 program because the tenant failed to provide income certifications (see e.g. 3015 Brighton Realty LLC v New York City Hous. Auth., Sup Ct, Kings County, Feb. 15, 2011, Baynes, J., index No. 26484/10).
After reviewing the language of the HAP contract, the court finds that the landlords are not seeking to enforce a provision set forth therein, since the language provides that the rent and any increase in rent for a unit must be reasonable and must be determined in accordance with HUD requirements.[1] Thus, any determination by the Housing Authority is not governed by the terms of the HAP contract, but is instead controlled by a determination made by the Housing Authority in accordance with the regulations promulgated by HUD. The court therefore concludes that the determination of whether the *886 landlords are entitled to an increase in the monthly rent subsidies payable to them must be reviewed in an article 78 proceeding. Moreover, the Housing Authority cites numerous cases so holding and the landlords fail to offer any rationale that would compel the finding that these cases were erroneously decided (see e.g. 1440 G. Pac. Realty Corp. v New York City Hous. Auth., Civ Ct, Kings County, June 16, 2010, Wade, J., index No. CV-46636-10/KI; 116 Lenox Realty LLC v New York City Hous. Auth., Civ Ct, Kings County, Toussaint, J., index No. CV-020000-08/KI; PHA Assoc. IX LLC v New York City Hous. Auth., Civ Ct, Kings County, Freed, J, index No. CV-088413-09/KI; G & S Assoc. v New York City Hous. Auth., Civ Ct, Richmond County, June 14, 2007, Dollard, J., index No. CV-023251-06/RI).
That the landlords improperly commenced this action seeking to recover damages for breach of contract, instead of commencing an article 78 proceeding seeking to review the determinations of the Housing Authority, does not require dismissal. “Under CPLR 103 (subd. [c]), the courts are empowered and indeed directed to convert a civil judicial proceeding not brought in the proper form into one which would be in proper form, rather than to grant a dismissal, making whatever order is necessary for its proper prosecution” (Matter of Cromwell Towers Redevelopment Co. v City of Yonkers, 41 NY2d 1, 5 [1976]; see generally Matter of Agoglia v Benepe, 84 AD3d 1072, 1077-1078 [2011] [an article 78 proceeding was converted to an action to abate and recover damages for a public nuisance]; Matter of Sandhu v Mercy Med. Ctr., 35 AD3d 479, 481 [2006] [under circumstances where the subject dispute could not be resolved in a CPLR article 78 proceeding because the gravamen sounded in contract, the proceeding was converted into a civil action for a judgment declaring that all or part of the contract at issue was void, and the notice of petition and petition were treated as a summons and complaint]). Accordingly, this action is deemed converted to an article 78 proceeding, the complaint shall be deemed to be a petition and the caption shall be deemed amended to refer to the landlords as petitioners and the Housing Authority as the respondent.
The Housing Authority’s Claim That the Action is Time-Barred
The Parties’ Contentions
The Housing Authority then argues that conversion of the contract action to an article 78 proceeding is without purpose, *887 since a party seeking review of an administrative determination must do so in a proceeding that is commenced within four months of the determination to be reviewed. The Authority explains that in the context of determinations related to Section 8 subsidies, the limitations period begins to run upon nonpayment of the first disputed subsidy. The Housing Authority reasons that the landlords, who are seeking mandamus to compel, must commence the proceeding within four months of its refusal to grant the relief demanded. Since the controlling regulations provide that the landlord is not entitled to an increase in a housing assistance payment until 60 days after the Housing Authority receives the request, and the regulations do not provide a date by which an increased subsidy payment must be paid, under circumstances where there has been no refusal to pay an increase, the refusal must be deemed to have occurred 60 days after the request was made. Thus, an article 78 proceeding challenging the determination must be commenced within a reasonable time thereafter, which is also argued to be four months after the 60-day period ends.
The Housing Authority further argues that the landlords were properly notified of its determination to suspend housing assistance payments because the subject apartments failed to comply with HQS requirements.
In opposition, the landlords again assert that since no administrative determinations were issued by the Housing Authority, and they were not aware of any determinations made by the Authority concerning their requests for rent increases, but for Ms. Ramsey’s claim, the statute of limitations did not begin to run. More specifically, since 24 CFR 982.519 provides that a rent subsidy increase must be paid at least 60 days after the Housing Authority receives the owner’s request, the regulation does not provide any time frame within which the Housing Authority must act, so there is no final determination to be challenged herein. In so arguing, the landlords emphasize that the Housing Authority never advised them that they were not going to pay the renewal rent increase. Similarly, for the three tenants whose apartments failed the HQS inspections, the Housing Authority did not advise the landlords that the subsidy would not be reinstated. The landlords also argue that if they were obligated to commence an article 78 proceeding within a reasonable time after the Housing Authority failed to comply with their requests for a rent increase, the issue of what constitutes a reasonable time is an issue of fact, not an issue of law.
*888 The landlords further allege that the claim for each of the tenants for whom they are seeking a rent increase premised upon a renewal lease that provided for an increase in rent is for a small amount of money each month, perhaps $25, which sum continues to accrue over the months during which the Housing Authority refused to pay any increases. The cost of commencing a proceeding to collect four months’ rent is not, therefore, economically prudent.
The Law
As a threshold issue, the court first notes that it has been held that “[a] party may not change the nature of a proceeding, thereby lengthening the Statute of Limitations, simply by denominating it as something other than it is” (Blackman v New York City Hous. Auth., 280 AD2d 324, 325 [2001]).
As argued by the Housing Authority, it is well settled that “[a]n article 78 proceeding must be brought ‘within four months after the determination to be reviewed becomes final and binding upon the petitioner’ ” (Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom, of City of N.Y., 5 NY3d 30, 34 [2005], citing CPLR 217 [1]; see generally Matter of Richardson v New York City Hous. Auth., 89 AD3d 1091, 1092 [2011]; Matter of Delgado v New York City Hous. Auth., 88 AD3d 521 [2011]). “ ‘The reason for the short statute is the strong policy, vital to the conduct of certain kinds of governmental affairs, that the operation of government not be trammeled by stale litigation and stale determinations’ ” (Solnick v Whalen, 49 NY2d 224, 232 [1980], quoting Mundy v Nassau County Civ. Serv. Commn., 44 NY2d 352, 359 [1978, Breitel, Ch. J., dissenting]).
As is also relevant to the instant dispute:
“An agency action becomes final and binding upon a petitioner when two factors are present: (1) where ‘the agency . . . reached a definitive position on the issue that inflicts actual, concrete injury’ and (2) where ‘the injury inflicted may not be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party’ (Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom, of City of N.Y., 5 NY3d 30, 34 [2005]).” (Matter of Carter v Walt Whitman N.Y. City Hous. Auth., 98 AD3d 1113, 1114-1115 [2012], lv denied 20 NY3d 856 [2013].)
The Court has also explained that
*889 “[b]efore commencing a proceeding in the nature of mandamus, it is necessary to make a demand and await a refusal, and the Statute of Limitations begins to run on the date of the refusal and expires four months thereafter (see, Austin v Board of Higher Educ., 5 NY2d 430, 442; Matter of Thompson v City of Poughkeepsie School Dist., 99 AD2d 550; Matter of Kolson v New York City Health & Hosps. Corp., 53 AD2d 827). The aggrieved party cannot, by delay in making his or her demand, extend indefinitely the period during which he or she is required to take action. If the allegedly aggrieved party does not proceed promptly and make a formal demand, he or she may be charged with laches (see, Austin v Board of Higher Educ., supra; Matter of Kolson v New York City Health & Hosps. Corp., supra).” (Matter of Civil Serv. Empls. Assn. v Board of Educ., Patchogue-Medford Union Free School Dist., 239 AD2d 415, 415-416 [1997]; accord Matter of Zupa v Zoning Bd. of Appeals of Town of Southold, 64 AD3d 723, 725 [2009].)
“ ‘The reasonable time requirement for a prompt demand should be measured by the four-month Statute of Limitations of CPLR article 78, and thus a demand should be made no more than four months after the right to make the demand arises’ ” (Matter of Blue v Commissioner of Social Servs., 306 AD2d 527, 528 [2003], quoting Matter of Densmore v Altmar-Parish-Williamstown Cent. School Dist., 265 AD2d 838, 839 [1999], lv denied 94 NY2d 758 [2000]; accord Matter of Zupa, 64 AD3d at 725).
The court also notes that the recent case of New York State Psychiatric Assn., Inc. v New York State Dept. of Health (71 AD3d 852, 855-856 [2010], rev on other grounds 19 NY3d 17 [2012]) is relevant to determination of the issue of whether the landlords’ commencement of this proceeding is time-barred. Therein, the Appellate Division, Second Department, held that where a continuing duty is imposed upon an administrative agency, as, for example, the duty to provide reimbursement of the Medicare deductible and coinsurance fees for services rendered to and claims processed for individuals eligible for both Medicare and Medicaid coverage, the statute of limitations is not a defense to claims based on breaches of a continuing duty which occurred within the limitations period and the defense of laches should not be applied to any of the repeated violations occurring within the limitations period, since each *890 new violation gives rise to a corresponding new right to demand compliance with the statute (New York State Psychiatric Assn., 71 AD3d at 855-856).
It must also be recognized that since Public Housing Law § 157 (1) requires that 30 days must elapse after service of a notice of claim before an action may be commenced, the statute of limitations is tolled during that 30-day period (Graham v City of New York, 199 AD2d 304 [1993], citing Public Housing Law § 157 [1]; CPLR 204 [a]; Serravillo v New York City Tr. Auth., 51 AD2d 1027 [1976], affd 42 NY2d 918 [1977]; accord Figueroa v New York City Hous. Auth., 271 AD2d 238 [2000]; Gamble v City of New York, 195 AD2d 441 [1993]).
Discussion
The court first finds that the landlords’ attempt to characterize this action as one seeking damages for breach of contract, instead of one pursuant to article 78 seeking to review an administrative determination, cannot serve to extend the applicable statute of limitations. Moreover, the landlords’ assertion that the six-year statute of limitations that governs contract actions applies herein has been rendered moot by the court’s holding that the landlords can only challenge the Housing Authority’s determinations in an article 78 proceeding.
The court also notes that while the Housing Authority did provide the landlords with notices that the apartments resided in by Brandy Williams, Linda Burroughs, Takesha Williams and Felicia Petway did not comply with HQS inspections, there is no allegation or proof that the agency thereafter notified the landlords that the subsidies would or would not be terminated. In addition, there is no allegation by the Housing Authority that the landlords were provided with any notification that the rent subsidy increases that had been approved by the Rent Guidelines Board would not be granted.
Thus, under the circumstances of this case, the court finds that the Housing Authority did not issue a final determination that started the running of the statute of limitations. Significant in so holding is the fact that the controlling regulation, 24 CFR 982.519 (b) (5) (ii), provides that the rent to the owner will be increased “at least sixty days after the PHA receives the owner’s request.” The regulation does not provide, however, for a date by which a determination to increase a rent subsidy must be made. In addition, 24 CFR 982.519 (a) provides that “[a]t each annual anniversary date of the HAP contract, the PHA must adjust the rent to owner at the request of the *891 owner in accordance with this section” (emphasis added). This provision compels the conclusion that the Housing Authority cannot avoid its obligation to increase a rent subsidy by failing to act on an owner’s request for an increase.
In so holding, the court inherently finds that inasmuch as the landlords have a continuing right to receive increased rent subsidizes for tenants who continue to reside in their buildings based upon an increase in rent, the court adopts the holding in the New York State Psychiatric Assn. case and holds that the landlords’ claims are not time-barred by laches. The court also notes that in arguing that the applicable statute of limitations is four months, the Housing Authority’s position fails to take into account the tolling of the statute of limitations by virtue of the need to file a notice of claim and to wait 30 days thereafter before a proceeding can be commenced (Figueroa, 271 AD2d 238; Graham, 199 AD2d 304; Serravillo, 51 AD2d 1027; Gamble, 195 AD2d at 441-442).
Finally, it must also be noted that during the pendency of this proceeding, the Housing Authority alleges that it has granted the landlords most of the relief to which they claim that they are entitled. More specifically, in a footnote in its reply affirmation, the Authority asserts that it has processed lease renewals and issued retroactive subsidies for 19 of the subject tenants. This action on the part of the Housing Authority further supports the conclusion that as of the date of the commencement of this action, it had not yet made a final determination with regard to the landlords’ application for rent increases that was subject to review.
Accordingly, the petition will not be dismissed as time-barred.
Standing
The Parties’ Contentions
The Housing Authority then argues that the landlords lack standing to challenge the agency’s determination that an individual tenant was terminated from the Section 8 program for failure to comply with the program’s requirements.
In opposition, the landlords argue that the Housing Authority claims that Ms. Gaskin was terminated from the Section 8 program on June 30, 2010, allegedly because she no longer resided in the subject premises. Her landlord asserts, however, that it continued to house Ms. Gaskin at the subject premises, without receiving any subsidy for her, because it did not receive any notice that her participation in the Section 8 program had *892 been terminated. Similarly, the Housing Authority did not advise the landlord that Ms. Ramsey had been terminated from the Section 8 program, despite the letter that Fortress 31 sent requesting confirmation of her status. The landlords thus conclude that they are not seeking to challenge the Housing Authority’s determination to terminate a tenant from the Section 8 program. Rather, they are challenging the agency’s failure to give them any notice of their determination to do so. The landlords concede that the claim with regard to Ms. Immacula Baptiste has been rendered moot.
The Law
“[S]tanding requires an actual legal stake in the outcome of the proceeding/action or, in other words, an injury in fact worthy and capable of judicial resolution” (Matter of La Barbera v Town of Woodstock, 29 AD3d 1054, 1055 [2006], lv dismissed 7 NY3d 844 [2006] [citation omitted]).
Discussion
Since the landlords herein are seeking to enforce the Housing Authority’s obligation to pay them the full amount of the rent subsidy for each tenant for whom it is entitled to receive a housing assistance payment, and are not seeking a review of a determination to continue or to terminate the participation of a tenant in the Section 8 program, the Housing Authority’s claim that the landlords lack standing is rejected.
Notice of Claim
The Parties’ Contentions
The Housing Authority contends that the landlords’ failure to file notices of claim, as required pursuant to Public Housing Law § 157 (1), compels dismissal of the action as it pertains to Felicia Petway and Ms. Ramsey.
In opposition, the landlords contend that notices of claim were served upon the Housing Authority; copies of the notices are annexed to the opposition papers and the landlords assert that copies were also annexed to their complaint.
The Law
Public Housing Law § 157 (1) provides that
“[i]n every action or special proceeding, for any cause whatsoever, prosecuted or maintained against an authority . . . the complaint or necessary moving papers shall contain an allegation that at least thirty days have elapsed since the demand, claim or *893 claims upon which such action or special proceeding is founded were presented to the authority for adjustment and that it has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.”
It has been repeatedly held that the failure to serve a notice of claim in the manner and method prescribed by statute upon the person designated by law is a fatal defect (see e.g. Kovachevich v New York City Hous. Auth., 295 AD2d 255 [2002]; Leon v New York City Hous. Auth., 214 AD2d 455 [1995]; Matter of Moore v New York City Hous. Auth., 35 AD2d 553 [1970]). It has also been held, however, that dismissal of the action is not required based on the failure to comply with Public Housing Law § 157 (1) by alleging in the complaint that 30 days have elapsed since the subject claim was presented, since the defect is not a jurisdictional one and the complaint can be deemed amended to plead the requisite presentment and refusal to make payment (Mendell v Salamanca Hous. Auth., 12 AD3d 1023, 1024 [2004], lv denied 15 AD3d 1016 [2005], quoting Snyder v Board of Educ. of Ramapo Cent. School Dist. No. 2, Town of Ramapo, Rockland County, 42 AD2d 912, 912 [1973]).
Discussion
As the above discussion reveals, a failure to file a notice of claim is fatal to a petitioner’s claim. A review of the notices of claim filed by the landlords reveal that none were filed for Ms. Petway and Ms. Ramsey. Accordingly, the proceeding is dismissed as to them.
Mandamus
The Parties’ Contentions
In support of its assertion that mandamus does not lie to compel it to implement rent increases, the Housing Authority argues that mandamus is a drastic remedy that is available only when a petitioner demonstrates a clear legal right to the relief sought; mandamus to compel cannot force the performance of a discretionary act, but only a purely ministerial one. The Housing Authority then argues that any decision to increase a housing assistance payment is discretionary, since a request for an increase must be processed in accordance with governing federal regulations. Thus, for example, an increase cannot be granted unless the Housing Authority first determines that the lease renewal was timely submitted. Further, it must be determined that the rent requested is reasonable, which determination *894 depends upon the location, quality, size, type, age and amenities of subject unit (see 24 CFR 982.507 [b]). In addition, the HAP contract states that “[t]he rent paid to [the landlord] may at no time exceed the reasonable rent for the [unit] as most recently determined ... by the [Housing Authority] in accordance with HUD requirements” (HAP contract para 6.a) and that “[t]he amount of the housing assistance payment to the [landlord] shall be determined by the [Housing Authority] in accordance with HUD requirements” (HAP contract para 7.c [1]).
In opposition to this contention, the landlords aver that the substantial majority of the claims set forth by them allege that the Housing Authority failed to pay appropriate rent increases. They explain that every apartment in which the named tenants resided is subject to the rent stabilization laws of the state, so that the rent increases that the landlords can charge are limited to the rent increases approved by the Rent Guidelines Board. Further, the landlords cannot opt out of the Section 8 program, because the tenants’ status as a Section 8 recipient becomes part of the tenants’ “bundle of rights” under the Rent Stabilization Code. Thus, they conclude that the determination of the Rent Guidelines Board with regard to an appropriate rent increase controls a determination of whether a rent is reasonable.
Reasonableness of the Rent Increases
It has been held that there is a “presumption that Congress did not intend to preempt the States’ power to regulate matters of local concern” (Matter of Holtzman v Oliensis, 91 NY2d 488, 494 [1998], citing Medtronic, Inc. v Lohr, 518 US 470, 484-485 [1996]; New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co., 514 US 645, 654-655 [1995]; California v ARC America Corp., 490 US 93, 101 [1989]). Further, New York courts have found that state laws imposing stricter requirements than federal law are not necessarily preempted (see e.g. City of New York v Job-Lot Pushcart, 88 NY2d 163 [1996], cert denied sub nom. JA-RU v City of New York, 519 US 871 [1996]). More specifically, it has been held that as a general proposition, courts in New York have held that the federal Section 8 legislative scheme does not preempt state tenant protection laws (Rosario v Diagonal Realty, LLC, 8 NY3d 755 [2007]; see also Matter of Mott v New York State Div. of Hous. & Community Renewal, 211 AD2d 147 [1995], appeal dismissed 86 NY2d 836 [1995]). In addition, it is beyond dispute that the rent regulatory scheme as enacted by the State of New York in the Rent *895 Stabilization Code is binding on the landlords herein, and that a landlord is not free to opt out of the program (Rosario at 764).
From this it follows that the landlords are obligated to accept the rent increases approved by the Rent Guidelines Board and are not free to seek to collect market rent. The court finds that since the landlords are obligated to accept the rent increases as set by the Rent Guidelines Board as “reasonable,” the Housing Authority is similarly obligated. In so holding, the court also notes that although the Housing Authority argues that is obligated to determine if a rent increase is reasonable, even after an increase is approved by the Rent Guidelines Board, it cites no case law precedent or regulatory authority that would allow it to issue a determination with regard to what constitutes a reasonable rent that is different than that adopted by the Rent Stabilization Board.
Mandamus
Mandamus to compel is a judicial command to an officer or body to perform a specified ministerial act that is required by law to be performed (see e.g. Matter of Hamptons Hosp. & Med. Ctr. v Moore, 52 NY2d 88 [1981]). The petitioner must show a “clear legal right” to the requested relief to succeed in mandamus and the petition must be denied if the right to performance is clouded by “reasonable doubt or controversy” (see e.g. Matter of Association of Surrogates & Supreme Ct. Reporters within City of N.Y. v Bartlett, 40 NY2d 571, 574 [1976]). Mandamus cannot be used to compel an officer or tribunal to reach a particular outcome with respect to a decision that turns on the exercise of discretion or judgment (see e.g. Klostermann v Cuomo, 61 NY2d 525 [1984]).
A reading of 24 CFR 982.519 (a) compels the conclusion that if a Section 8 landlord complies with the requirements of the provision, the Housing Authority “must adjust the rent to owner at the request of the owner” in accordance with the requirements set forth in that regulation (emphasis added). Thus, this regulatory direction belies the Authority’s contention that the determination of whether a rent subsidy will be increased is discretionary. Accordingly, there is no authority that would allow the Housing Authority to refuse to increase the housing assistance payment paid to a landlord based upon *896 an increased rent approved by the Rent Guidelines Board.[2] The court accordingly concludes that mandamus to compel the Housing Authority to increase the rent subsidy paid to the landlords is appropriate under circumstances where it is established that the requirements of 24 CFR 982.519 are met.[3]
Moreover, even if the court did not so hold, the landlords’ proceeding can be deemed to be one seeking to review of the Housing Authority’s determinations under CPLR 7803 (3). It is well established that “[i]n an article 78 proceeding, an administrative action can be set aside if it was affected by an error of law, was made in violation of lawful procedure, or was arbitrary, capricious or an abuse of discretion” (Matter of Metropolitan Movers Assn., Inc. v Liu, 95 AD3d 596, 598 [2012], citing CPLR 7803). Thus, regardless of whether the proceeding is characterized as one seeking mandamus or a review of the Housing Authority’s determinations, the court can direct the Housing Authority to issue a determination increasing the rent subsidies, as demanded by the landlords, in the absence of any claim by the Housing Authority that the requests are properly denied for a failure to meet the requirements of 24 CFR 982.519.
The Housing Authority’s Claim That the Complaint is Moot The Parties’ Contentions
The Housing Authority argues that the action should be *897 dismissed as moot with regard to those tenants who have provided it with the documentation necessary to renew their leases and, as a result, the Housing Authority will implement lease renewal increases in accordance with federal regulations. As noted above, in footnote 1 of its reply affirmation, the Housing Authority also asserts that it has provided the landlords with the relief sought “by processing lease renewals and issuing retroactive subsidy payments, where appropriate, on behalf’ of 19 tenants.
The landlords concede that the proceeding has been rendered moot with regard to only Ms. Baptiste.
Discussion
Inasmuch as the Housing Authority fails to annex any proof to establish that the landlords’ claims were rendered moot, and the assertion is not conceded by the landlords, the petition is dismissed with regard to only Ms. Baptiste on this ground.
The Landlords Cannot Seek Payments after the HAP Contract Terminated
The Parties’ Contentions
In support of this demand for dismissal, the Housing Authority argues that since the HAP contract terminates 180 calendar days after the last housing assistance payment is given to the owner, the agency is relieved of any obligation to pay a rent subsidy after a lease terminates. Accordingly, Fortress Crotona has no basis for its claim for payment from February 2011 for Ms. Burroughs and from June 1, 2011 for Ms. Petway, or 180 days after the last payment was made for each of these tenants.
The landlords do not address this contention.
Discussion
As was the case in arguing that the claims with regard to 19 tenants have been rendered moot, the Housing Authority fails to annex any evidence to support its claim that no subsidies were paid to the landlords on behalf of Ms. Burroughs and Ms. Petway for 180 days. Moreover, the gravamen of the landlords’ claims is that no subsidies were increased after their requests were made and no determination with regard to any denial of the claims were sent to them. Accordingly, even if no payments were made to Ms. Burroughs and Ms. Petway for 180 days, the Housing Authority fails to establish that petitioners were so advised or that they are not entitled to receive a subsidy for the *898 period during which these tenants continued to reside in the subject units without being notified that the last housing assistance payment had been made.
Conclusion
For the above stated reasons, the motion by the Housing Authority is granted to the extent of converting the contract action commenced by the landlords into an article 78 proceeding. As such, the complaint shall be deemed to be a petition and the caption shall be deemed amended to refer to the landlords as petitioners and the Housing Authority as respondent. Those branches of the Housing Authority’s motion to dismiss the petition are granted only to the extent of dismissing the proceeding as it relates to the rent subsidies for Ms. Petway and Ms. Ramsey, since no notices of claim were filed as required by Public Housing Law § 157, and dismissing the claim relating to Ms. Baptiste’s subsidy as moot.
All other relief requested is denied. The Housing Authority is directed to serve an answer addressing the merits of the proceeding within 30 days of service upon it of a copy of this order and decision with notice of entry.

. For example, the HAP contract provides that
“Rent to Owner: Reasonable Rent
“The PHA must redetermine the reasonable rent when required in accordance with HUD requirements. The PHA may redetermine the reasonable rent at any time.” (HAP contract para 6 [c].)
“Amount of PHA payment to owner
“The amount of the PHA housing assistance payment to the owner shall be determined by the PHA in accordance with HUD requirements for a tenancy under the voucher program.
“The amount of the PHA housing assistance payment is subject to change during the HAP Contract term in accordance with HUD requirements. The PHA must notify the family and the owner of any changes in the amount of the housing assistance payment.” (HAP contract para 7 [c] [1], [2].)

. The Housing Authority’s assertion that it has the discretion and/or obligation to determine whether a rent increase, as approved by the Rent Guidelines Board, is reasonable, has been discussed above and rejected.

. 24 CFR 982.519 provides, in pertinent part, that
“(b) Amount of annual adjustment.
“(1) The adjusted rent to owner equals the lesser of. . .
“(ii) The reasonable rent (as most recently determined or redetermined by the PHA in accordance with § 982.503); or
“(in) The amount requested by the owner. . . .
“(4) . . . the rent to owner for a unit must not be increased at the annual anniversary date unless:
“(i) The owner requests the adjustment by giving notice to the PHA; and
“(ii) During the year before the annual anniversary date, the owner has complied with all requirements of the HAP contract, including compliance with the HQS.
“(5) The rent to owner will only be increased for housing assistance payments covering months commencing on the later of:
“(i) The first day of the first month commencing on or after the contract anniversary date; or
“(ii) At least sixty days after the PHA receives the owner’s request.”