OPINION OF THE COURT
Katherine A. Levine, J.
The decision/order on this motion is as follows:
Plaintiff 93 Ralph, LLC (plaintiff or landlord) brings this breach of contract action to recover $25,000 from defendant New York City Housing Authority (defendant or Housing Authority) for unpaid Section 8 subsidies and consequential damages. Plaintiff alleges that the Authority improperly suspended subsidy payments between January-June 2011 due to its failure to timely notify plaintiff of defects in the property, as contained in the contract between plaintiff and defendant, and hence failed to give plaintiff an opportunity to cure said defects.
Defendant moves to dismiss the complaint pursuant to CPLR 3211 (a) (2) on the grounds that this court lacks subject matter jurisdiction since the plaintiff should have challenged the Housing Authority’s failure to give proper notice in a CPLR article 78 proceeding and the Civil Court has no jurisdiction to hear an article 78 proceeding. Defendant also moves to dismiss pursuant to CPLR 3211 (a) (5) and (7) on the grounds that any claims under an article 78 proceeding are time-barred and that plaintiff fails to state a cause of action.
Facts
Plaintiff owns an apartment building at 93 Ralph Avenue in Brooklyn, New York. It participates in the federally funded Section 8 rent subsidy program of the Housing Act of 1937 (42 USC § 1437f), which aids “low-income families in obtaining a decent place to live, by subsidizing private landlords who would rent to low-income tenants.” (Rosario v Diagonal Realty, LLC, 9 Misc 3d 681, 685 [Sup Ct, NY County 2005], citing Cisneros v Alpine Ridge Group, 508 US 10, 12 [1993].) Section 8 authorizes the U.S. Department of Housing and Urban Development (HUD) to enter into annual contribution contracts with local public *694 housing authorities so that they may make assistance payments to owners of existing buildings. (Rosario, 9 Misc 3d at 685.) The Housing Authority is one of the local agencies that administers the Section 8 program. (Citadel Estates, LLC v New York City Hous. Auth., 39 Misc 3d 880 [Sup Ct, Kings County 2013].)
HUD has promulgated regulations that govern the operation and administration of Section 8. (See 24 CFR part 982.) Pursuant to 24 CFR 982.305 (a) (2) and (b) (1) (i), all prospective apartments must meet federal housing quality standards (HQS) and be inspected by the Housing Authority prior to being certified under Section 8. Once certified, the apartments must be inspected at least once annually to ensure their continuous compliance. The regulations prohibit the Authority from paying any subsidies to apartments that do not need federal HQS. (24 CFR 982.404 [a] [3]; 982.452 [b] [2]; 982.453 [a] [1].) Pursuant to 24 CFR 982.404, the Housing Authority must afford the landlord at least 30 days to correct any non-life-threatening HQS violation unless the Housing Authority extends the deadline. (See Matter of 12th & 14th Street Inv., LLC v New York City Hous. Auth., 2013 NY Slip Op 30696[U] [Sup Ct, NY County 2013]; Rowe v New York City Hous. Auth. Law Dept., Civ Ct, Kings County, Sept. 30, 2010, Levine, J., index No. CV-029455-10.)
The relationship between the landlord and the Housing Authority is governed by a housing assistance payments (HAP) contract under which the latter pays the Section 8 landlord monthly housing assistance payments from funds allocated by HUD. These payments constitute the difference between the total rent due for an apartment leased by the landlord to a qualified tenant and the rent due by said tenant under the controlling federal regulations. (Citadel Estates, 39 Misc 3d at 883.)
Both sides agree that the plaintiff and the Housing Authority entered into a HAP contract on or about May 1, 2009. According to the HAP contract, part B, subsection 7, defendant must make monthly payments so long as the plaintiff complies with all the provisions of the contract. Part B, subsection 3 (a), requires the landlord to “maintain the contract unit and premises in accordance with the HQS.” Subsection 3 (c) provides that “if the owner does not maintain the contract unit in accordance with the HQS . . . the [Authority] may exercise any available remedies which include the termination of housing assistance payments.” Subsection 3 (e) allows the Authority to inspect the contract unit and premises as the Authority sees fit *695 in accordance with the HQS. Per subsection 3 (f), the Housing Authority must notify the owner of any HQS defects revealed by the inspection and the Authority shall not, pursuant to subsection 3 (d), make any housing assistance payments if the contract unit does not meet the HQS, “unless the owner corrects the defect within the period specified by the Authority and the Authority verifies the correction.”
It is clear that the HAP contract does not spell out the time limit in which the Authority must notify the landlord of the HQS defects or how much time the Authority must give the landlord to cure the defects before it stops making HAP payments. While subsection 3 (d) mandates that the landlord/owner must cure the defect within 24 hours if the defect is “life threatening,” it does not specify the cure period for non-life-threatening defects, leaving it up to the Housing Authority to determine the necessary period.
Plaintiff asserts that the Housing Authority has “clarified the process” by a memo which states that once an inspection is done the Authority must mail the results of the inspection to the landlord within one business day via an “NE-1 Notice.” This notice advises the landlord that it has 30 days to complete the repairs, which if complied with will obviate the suspension of payments. However, plaintiff failed to attach this memo to any of its papers.
Suspension of the Subsidy
By NE-1 letter dated December 29, 2010, the Authority indicated that based upon its inspection of the premises on December 3, 2010, it had found six “serious HQS” violations. The notice indicated that the window guard violation had to be corrected within 10 days of the inspection and all other serious violations had to be corrected as “expeditiously as possible.” The notice then stated that unless plaintiff notified the Authority that the appropriate remedies had been properly made and that such corrective measures were verified, the Authority would suspend subsidies on December 31, 2010. The notice specified that the landlord had to notify the Authority within 20 days after the inspection that the repairs had been made so that the Authority could reinspect the premises on December 28, 2010.
Both sides agree that the Authority suspended plaintiff’s subsidy for the assisted apartment effective January 2011. While not addressed by plaintiff, the Housing Authority indicates that *696 on February 23, 2011, it again inspected the apartment and found that two serious HQS violations existed, including the preexisting violation of mouse droppings. By NE-1 letter dated March 9, 2011, the Authority notified the landlord that it would suspend the subsidy on March 25, 2011, unless the repairs were made within 20 days of the inspection. If the landlord failed to comply, the Authority would offer the family a voucher to enable them to seek other housing and would terminate the HAP contract without further notice if the family was approved for a transfer. On June 16, 2011, the subject premises passed an inspection and the Authority lifted its payment suspension for the apartment on July 1, 2011.
On or about October 4, 2011, the Housing Authority was served with a summons and complaint for unpaid housing subsidies from January through June 2011. The complaint alleges that the Authority “breached the HAP contract by suspending the Section 8 payments without following the notice procedure.” Rather than sending the NE-1 notice on December 6, 2010, as required by the memo,* defendant mailed the letter 28 days after the inspection. The notice was received by plaintiff on January 7, 2011, making it virtually impossible for plaintiff to make the necessary repairs prior to December 28, 2010 when the Housing Authority was supposed to reinspect, or to avoid suspension of payments. The complaint avers that plaintiff was thus damaged by the wrongfully suspended subsidy payments and incurred various consequential damages to the extent of $25,000.
Discussion
In determining a motion to dismiss pursuant to CPLR 3211, the court accepts the facts alleged in the complaint as true, and the plaintiff is accorded the benefit of every favorable inference. (Leon v Martinez, 84 NY2d 83 [1994].) The court solely determines whether “the facts as alleged fit within any cognizable legal theory.” (Id. at 87-88; see 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144 [2002].)
Defendant moves to dismiss this proceeding because plaintiff is challenging an administrative determination of the Housing Authority to suspend or withhold Section 8 subsidy payments, which can only be brought pursuant to CPLR article 78. It also asserts that plaintiff cannot cast its action as one resting in *697 contract simply because there is a HAP contract, because plaintiffs claims inextricably arise from the Housing Authority’s administration of the Section 8 program and its alleged failure to comply with regulations and procedures governing said program. Finally, defendant asserts that the Supreme Court has exclusive jurisdiction over article 78 proceedings.
Plaintiff counters that Civil Court is the proper forum as its complaint is based in contract law since defendant breached the HAP contract by suspending the Section 8 payments without following the notice and time to cure procedures laid out in subsection 3 (f) of the contract. Plaintiff elaborates that the “essence” of its claim is breach of an express contractual right and that the Housing Authority “clarified the process” set forth in subsection 3 (d) of the contract by issuing a memo, that was not produced by either party, which mandates that the results of an inspection be mailed to the landlord on the next business day.
It is well established that a challenge to an administrative decision of the Housing Authority must be brought in a CPLR article 78. (Citadel Estates, LLC v New York City Hous. Auth., 39 Misc 3d 880 [Sup Ct, Kings County 2013]; 1543-75 Nostrand Assoc. v Flowers, NYLJ, Apr. 21, 1994 at 26, col 2 [App Term, 2d Dept, 2d & 11th Jud Dists 1994]; Rowe v New York City Hous. Auth. Law Dept., Civ Ct, Kings County, Sept. 30, 2010, Levine, J., index No. CV-029455-10; Vincenzi v Strong, 16 Misc 3d 1121[A], 2007 NY Slip Op 51534[U] [Civ Ct, Bronx County 2007]; 1801 Weeks Ave. v Crawford, 182 Misc 2d 251 [Civ Ct, Bronx County 1999].) The courts have repeatedly found that a challenge to the Housing Authority’s suspension of monthly Section 8 payments to the landlord must be brought via an article 78 proceeding in Supreme Court. (See Citadel Estates, 39 Misc 3d at 885; Matter of 12th & 14th Street Inv., LLC v New York City Hous. Auth., 2013 NY Slip Op 30696[U] [Sup Ct; NY County 2013]; 1440 G. Pac. Realty Corp. v New York City Hous. Auth., Civ Ct, Kings County, Aug. 25, 2010, index No. 046636/ 10; Undercliff Holding LLC v New York City Hous. Auth., Civ Ct, NY County, Jan. 22, 2010, index No. 32831/09; 960 Sherman Ave. Assoc. v New York City Hous. Auth., Civ Ct, NY County, Sept. 16, 2009, index No. 010190/09.) This is because it is the controlling regulations, and not the HAP contract, which govern the Housing Authority’s ability to make HAP payments contingent upon the apartment’s meeting HQS as established by HUD (24 CFR 982.401, 982.404 [a]). Similarly, it is the *698 regulations and not the HAP contract which mandate annual inspections and compliance with the HQS (24 CFR 982.405; Citadel, 39 Misc 3d at 885-886).
On the other hand, where a public official or governmental body breaches a contract resulting in damages to the plaintiff, “the claim must be resolved through the application of traditional rules of contract law.” (Abiele Contr. v New York City School Constr. Auth., 91 NY2d 1, 8 [1997]; Citadel Estates, 39 Misc 3d at 884.) In Abiele, the Court held that the plaintiff could maintain a plenary action for a breach of contract where the School Construction Authority terminated a contract with a private contractor to build a school. Similarly, a dispute concerning the sum due under a contract to transport handicapped children to school should be properly resolved in a breach of contract action as opposed to a mandamus to compel payment. (Matter of Steve’s Star Serv. v County of Rockland, 278 AD2d 498, 500 [2d Dept 2000].)
Ultimately, whether a plenary action or a special proceeding is appropriate is dependent upon whether the petitioner asserted that the governmental action was in violation of lawful procedure or was arbitrary and capricious and an abuse of discretion, in which case an article 78 proceeding is the appropriate vehicle. (Abiele, 91 NY2d at 8; see 35-41 Clarkson LLC v New York City Hous. Auth., 2012 WL 5992094, 2012 US Dist LEXIS 170555 [SD NY, Nov. 30, 2012, No. 11 Civ 6770 (PKC)].) Only if the focus of the controversy is on an agency’s breach of an express contractual right, or on the agency’s violation of the implied obligations of good faith, fair dealing and cooperation, would a plenary action be appropriate. (Abiele at 7-8; see DDEH 291 Pleasant, LLC v Reinert, 2009 NY Slip Op 32790[U] [Sup Ct, NY County 2009].)
In the one case where the plaintiffs specifically challenged the timeliness of the NE-1 notice concerning HQS violations, the Southern District found that the plaintiff could raise its due process arguments re notice in an article 78 proceeding as opposed to a 42 USC § 1983 proceeding. {35-41 Clarkson LLC.) The court acknowledged that plaintiff might also have a breach of contract claim in state court, citing Abiele, but expressed no opinion as to the merits of such a contract claim or whether plaintiffs claims “are more appropriately addressed by an Article 78 proceeding or a plenary action for breach of contract.” (2012 WL 5992094 at *7, 2012 US Dist LEXIS 170555 at *21.) All the other reported cases involving the ambiguity or timeliness of an *699 NE-1 notice have centered around when the four-month statute of limitations contained in article 78 begins to run. These courts have therefore implicitly found that a challenge to an NE-1 notice rests in an article 78 proceeding and not a breach of contract action. (See Matter of 193 Realty LLC v Rhea, 37 Misc 3d 1203[A], 2012 NY Slip Op 51865[U] [Sup Ct, NY County 2012]; Matter of Bramble Weilders, Inc. v New York City Hous. Auth., 2012 NY Slip Op 32181[U] [Sup Ct, NY County 2012]; Matter of 731 Gerard Watson, LLC v Rhea, 2013 NY Slip Op 31349[U] [Sup Ct, NY County 2013].)
Plaintiff in essence contends that the Authority acted in an arbitrary and capricious manner by sending out an untimely notice of the defects so that it had no time to cure the defects and avoid suspension of housing assistance payments. Alternatively, plaintiff contends that a document, which it fails to attach, requires the Authority to notify it of the defects within one day. Plaintiff tacitly admits that the Authority created this document and that it is not incorporated into the HAP contract.
Plaintiff cannot recast the gravamen of its complaint as one in contract merely because the HAP contract requires that a landlord be notified of HQS violations. The HAP contract itself is a creation of the federal regulations. It is clear that the HAP contract does not spell out the time limit in which the Authority must notify the landlord of the HQS defects or how much time the Authority must give the landlord to cure the defects before it stops making HAP payments. Rather, it is up to the discretion of the Authority as to when it sends out the notice and how many days it gives a landlord to cure the defects before it will suspend the Section 8 subsidies. This is precisely the type of decision which must be challenged through an article 78 proceeding. (See DDEH 291 Pleasant, LLC v Reinert, 2009 NY Slip Op 32790[U] [Sup Ct, NY County 2009] [where the Department of Housing Preservation and Development had a choice whether to reduce housing assistance payments it abused its discretion, rather than violating the contract, when it decided to suspend subsidy payments rather than terminating contract].)
An article 78 proceeding may only be brought in the Supreme Court. (CPLR 7804 [b]; Matter of Sovocool v David, 7 AD2d 262, 266 [3d Dept 1959]; Matter of Voccola v Shilling, 88 Misc 2d 103, 109-111 [Sup Ct, Kings County 1976].) The Civil Court lacks jurisdiction to hear appeals of government actions, which, as set forth above, must be brought pursuant to article 78 in Supreme Court. (Fuca v City of New York, 15 Misc 3d 86, 87 *700 [App Term, 2d Dept, 2d & 11th Jud Dists 2007]; Bey v City of New York, 32 Misc 3d 946 [Civ Ct, Kings County 2011].) The Civil Court is a court of limited jurisdiction, possessing only that subject matter provided by law. (Fuca, 15 Misc 3d at 87; see Bey, 32 Misc 3d at 947-948 [Civ Ct, Kings County 2011].) Where the Civil Court, or any other lower court, lacks jurisdiction to hear a case, it may not determine any matter raised therein which is outside of the court’s jurisdiction. (See Fuca v City of New York [small claims court without jurisdiction to determine whether plaintiff filed the action within four months of determination].) Put another way, where the Civil Court lacks jurisdiction, any proceedings had in that court are a nullity. (Kaminsky v Connolly, 73 Misc 2d 789 [App Term, 1st Dept 1972]; Bey at 948.)
As the Civil Court lacks subject matter jurisdiction, it is beyond its power to review an administrative determination of the Housing Authority (Rowe v New York City Hous. Auth. Law Dept., Civ Ct, Kings County, Sept. 30, 2010, Levine, J., index No. CV-029455-10), or rule upon whether the instant challenge was brought within the four-month statute of limitations prescribed in CPLR 7804 or the merits of the article 78 proceeding. (See CPLR 217 [1].)
However, rather than dismiss the case for lack of jurisdiction pursuant to CPLR 3211 (a) (2), this court has the authority under NY Constitution, article VI, § 19 (f) to transfer this case to Supreme Court. (See Bey v City of New York, 32 Misc 3d 946 [Civ Ct, Kings County 2011].) Transfer of an action over which the court has not jurisdiction is required on the court’s own motion. (Kaminsky v Connolly, 73 Misc 2d at 790; see also Baptist Temple Church v Mann, 194 Misc 2d 498 [Civ Ct, NY County 2002] [where petitioner’s claim for affirmative relief — the eviction of the respondent pastor — cannot be accomplished without a declaratory judgment that the pastor was properly terminated, which was solely within the jurisdiction of the Supreme Court, the proper remedy was not dismissal of the case but transfer of the case from Civil Court to Supreme Court]; Simmons v Simmons, 2 Misc 3d 536, 541 [Civ Ct, Queens County 2003] [the directive to transfer is cast in mandatory, and not permissive, terms]; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, CCA 202 at 37.)
Furthermore, within the context of other courts of limited jurisdiction, article VI, § 19 has been interpreted as mandating transfer rather than dismissal where such lower court lacked *701 jurisdiction. (See Abrams v Broker Mem. Home, 123 AD2d 585 [1st Dept 1986] [article VI, § 19 (d) mandates transfer, rather than dismissal, when the Surrogate’s Court lacks jurisdiction]; Matter of Rita F. v Neil F, 12 Misc 3d 894 [Fam Ct, NY County 2006] [article VI, § 19 (e) obliges Family Court to transfer actions over which it has no jurisdiction to Criminal Court rather than dismiss the case for lack of jurisdiction].) In light of the above, this court is compelled to transfer the case to Supreme Court, Kings County rather than dismiss it.
To implement the transfer, the plaintiff shall purchase an index number in Supreme Court and a request for judicial intervention and complete and file the appropriate forms and papers, with a copy of this order. The plaintiff shall then present proof of the filing to the Clerk of the Civil Court, who shall then transfer this action and motion to Supreme Court. (Simmons v Simmons, 2 Misc 3d at 544; see Kaufman v CBS Inc., 135 Misc 2d 64, 65-66 [Civ Ct, NY County 1987].)

 As set forth previously, neither side has produced a memo which defines the time line in which the Authority must notify a landlord of HQS violations.